**SO ORDERED.**

**SIGNED this 23 day of March, 2011.**



_____
**JAMES P. SMITH**
**UNITED STATES BANKRUPTCY JUDGE**
_____

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| Blue Willow Inn Restaurant, Inc., et al ) | |
| ) | Case Nos. 10-31267, 10-31269, 10-31270 |
| Debtors ) | and 10-31266 |
| ) | |
| ) | (Jointly Administered Under |
| ) | Case No. <u>10-31267</u>) |
| ) | |

### FINAL ORDER ON MOTION
### FOR ORDER AUTHORIZING USE OF CASH COLLATERAL
### PURSUANT TO 11 U.S.C. § 363 AND PROVIDING ADEQUATE PROTECTION

**IT APPEARING TO THE COURT** that Debtors and Debtors-in-Possession in the above-referenced bankruptcy cases (the "Debtors") have moved this Court, pursuant to 11 U.S.C. § 363 for an order authorizing the Debtors to use cash collateral in the operation of their businesses [Docket No. 78](the "Motion"); the Court, having reviewed the Motion; secured creditor Wells Fargo Bank, N.A., as successor in interest to Wachovia Bank, NA ("Wells Fargo")

having consented thereto subject to and on the conditions set forth herein; and, having considered all other matters of record, the Court finds and concludes as follows:

A.

On July 20, 2010, the Debtor and its affiliates[1] filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), and from and after that date (the "Petition Date") the Debtors have managed their businesses as Debtors-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.

No trustee or examiner has been appointed. This matter is a "core proceeding" within the meaning of 28 U.S.C. §§ 157(b)(2). To date, no Official Committee of Unsecured Creditors has been appointed.

C.

The Debtors, except individual debtors E. Louis Van Dyke and Billie R. Van Dyke, are Georgia corporations with their principal place of business located at 294 N. Cherokee Road, Social Circle, Georgia 30025. Debtors own and operate businesses related to the Blue Willow Inn Restaurant located in Social Circle, Georgia (the "Businesses").

D.

Debtors are not currently aware of any grounds to dispute that they are indebted to Wells Fargo in the aggregate amount of approximately $2.9 million, plus costs and attorneys' fees through the Petition Date (the "Indebtedness"), under the following described promissory notes:

---

[1] Blue Willow Village, Inc., Case No. 10-31269; Blue Willow Inn Gift Shop, Case No. 10-

1. <u>Magnolia Hall Loan</u>   Indebtedness of E. Louis Van Dyke and Billie R. Van Dyke in the original principal amount of $490,000.00 reflected in a Promissory Note dated June 13, 2007 and secured by a Deed to Secure Debt and Assignment of Rents dated June 14, 2007, recorded in Deed Book 2743, Page 371, Walton County, Georgia Records. The Note is guaranteed by co-debtors Blue Willow Restaurant, Inc. and Blue Willow Inn Gift Shop, Inc. and by non-debtor The Van Dyke Hospitality, Inc.

2. <u>Line of Credit Loan</u>   Indebtedness of E. Louis Van Dyke and Billie R. Van Dyke in the original principal amount of $100,000.00 secured by a Deed to Secure Debt and Assignment of Rents dated October 9, 2008, recorded in Deed Book 3031, Page 137, Walton County, Georgia Records and reflected in a certain Promissory Note dated October 9, 2008.

3. <u>The Village Loan</u>   Indebtedness of Blue Willow Village, Inc. as evidenced by certain Promissory Note dated December 4, 2007 in the original principal amount of $2,875,000.00 which note is secured by that certain Deed to Secure Debt, Assignment of Rents and Security Agreement dated December 4, 2007, recorded in Deed Book 2844, Page 251, Walton County, Georgia Records conveying real property, improvements, furnishings and equipment located in Land Lot 96 of the 1st District of Walton County, Georgia, being 7.112 acres of land. The Village Loan is guaranteed by Van Dyke Hospitality Group, Inc., Blue Willow Inn Restaurant, Inc., Blue Willow Inn Gift Shop, Inc. and E. Louis Van Dyke and Billie R. Van Dyke.

4. <u>Swap</u>   Indebtedness of Blue Willow Village, Inc. in connection with a swap agreement dated December 4, 2007 and secured by the Village Security Deed.

---

31270; E. Louis Van Dyke and Billie R. Van Dyke, Case No. 10-31266.

E.

To secure the indebtedness evidenced by the Loan Documents, Debtors granted to Wachovia a security interest in, without limitation, all of its rights, title and interest in the following: Debtors' developed real property located at 147 N. Cherokee Road, Social Circle, Georgia 30024 and 294 N. Cherokee Road, Social Circle, Georgia 30025, and the proceeds related thereto including rents. The foregoing categories, all as more particularly described in the Loan Documents, will hereinafter be referred to as the "Collateral." Some or all of the Collateral, whether now existing or hereafter acquired, constitutes or will constitute "cash collateral" within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral").

F.

For the purposes of this Order, Debtors are not currently aware of any grounds to dispute that Wells Fargo holds a valid, first priority security interest in the Collateral, properly perfected by, among other things, the Deeds to Secure Debt and Assignment of Rents discussed above and attached as Exhibits C - F to the Motion. The Debtors have agreed that they must raise any objection they may have as to Wells Fargo's perfected security position in the Collateral, or any objection they may have as to the validity or character of Wells Fargo's liens by **March 18, 2011**, or such objection is hereby deemed waived.

G.

The Debtors have agreed with Wells Fargo to cooperate with reasonable requests of Wells Fargo for information about the operation of the Debtors' businesses, the cash flow accruing therefrom, and the Debtors' reorganization prospects. The Debtors have agreed to promptly provide Wells Fargo with access to its financial records, and the records of its affiliates,

and such other information as Wells Fargo shall reasonably request.

H.

Debtors need to use cash collateral to maintain the operations of their businesses. The entry of this Order is, therefore, in the best interests of the Debtors, their creditors and their Estates. Any and all use of Cash Collateral, as defined below, constitutes an actual and necessary cost and expense of preserving the Debtors' estates for the benefit of all of their creditors.

In accordance with the foregoing findings, **IT IS HEREBY ORDERED** that

1.

The Debtors are authorized to use, in the ordinary course of their businesses, the Cash Collateral to continue their operations, in amounts not to exceed the sums set forth by category in the budget attached hereto as Exhibit "1" (the "Budget") on a monthly basis and in accordance with the terms and conditions of this Order.

2.

Debtors' expenditures for any individual budget category may not exceed the amounts allocated to such category in any given month by more than fifteen percent (15%) and the total operating budget may not exceed the budgeted amount by more than ten percent (10%).

3.

The Debtors must raise any objection they may have as to Wells Fargo's perfected security position in the Collateral, or any objection they may have as to the validity or character of Wells Fargo's liens by **March 18, 2011**, or such objection is hereby deemed waived. Any objection that the Debtors may have may only be raised through an adversary proceeding.

4.

Without waiving any of the foregoing, the Debtors shall not, without the consent of Wells Fargo or order of the Court, use any Cash Collateral: (a) for the payment of any pre-petition debts or obligations of Debtors or claims against Debtors; (b) for the payment of any debts or obligations of Debtors that are not directly related to the management or operation of the businesses; (c) for pre-payment for services that have not yet been rendered, goods which have not yet been received, or any other items of expense for which payment is not currently due, except in the ordinary course of business; or (d) to challenge the validity, extent, perfection, or character of Wells Fargo's liens. Cash Collateral shall not be used for the payment of any expenses incurred by or on behalf of any party or entity other than Debtors or commingled with funds which are not property of Debtors or which are used for the payment of expenses incurred by or on behalf of any party other than the Debtors, except with the consent of Wells Fargo or upon order of the Court. This Order shall be without prejudice to Debtors' rights to request the permission of Wells Fargo or to seek an order of the Court to use Cash Collateral for any expenditure not provided for herein and Wells Fargo's right to object thereto.

5.

Wells Fargo is entitled, pursuant to Sections 361 and 363 of the Bankruptcy Code, to adequate protection of its interest in the Cash Collateral for any diminution in value of its interest in the Cash Collateral (collectively, the "Adequate Protection Obligations"). As adequate protection, Wells Fargo shall be paid $75,000 by February 25, 2011, for the Debtors' use of Wells Fargo's cash collateral for July 20, 2010 to February 28, 2011, plus $10,000.00 per month due by the fifteenth of each month commencing in March 2011 until further order of the Court,

and is hereby granted (effective and perfected as of the date of the Order) a secured interest in and lien (the "Adequate Protection Liens") upon all post-petition collateral of the same type in which it held a valid and perfected security interest prior to the Petition Date (the "Adequate Protection Collateral"); provided, however, the Adequate Protection Liens shall not attach to any causes of action, claims or rights of the Debtors' bankruptcy Estates or recovery thereof under sections 506(c), 544, 547, 548, 549, 550, and/or 553 of the Bankruptcy Code (the "Avoidance Actions"). The Adequate Protection Liens shall be deemed valid and perfected notwithstanding the requirements of non-bankruptcy law with respect to perfection. The Adequate Protection Liens shall be supplemental of, and in addition to, any security interest which Wells Fargo possesses pursuant to the Loan Documents and the applicable assignments. Debtors, with the use of Cash Collateral, shall continue to maintain the Collateral post-petition, including the maintenance of insurance coverage on the Collateral.

6.

Upon the request of Wells Fargo, Debtors will execute any further documents deemed reasonably necessary and appropriate by Wells Fargo to establish, evidence, or perfect the liens granted herein. Debtors will keep records of such character as are reasonably calculated to enable Debtors to determine at any time the status of all Cash Collateral, and shall permit Wells Fargo, its agents and employees, upon reasonable notice during regular business hours, to inspect the Collateral and inspect, audit and make copies of all records and other papers in the possession, custody or control of the Debtors pertaining to the Cash Collateral in which Wells Fargo has an interest. Debtors shall file with the Court an Operating Report by the 20th day of each month for the preceding month's activities as required by the local rules.

7.

The following events, in addition to those identified elsewhere in this Order, shall cause an "Event of Default" at which time Debtors shall not be permitted to use Cash Collateral without the written consent of Wells Fargo: (a) the Debtors fail to comply with any provision of this Order and, if such default is curable, does not cure any such failure within five (5) business days of Wells Fargo giving written notice of such failure by electronic mail or fax to Debtors' counsel; (b) a trustee is appointed or an examiner with the powers of trustee is appointed; (c) the above-styled case is converted to a case under Chapter 7 of the Bankruptcy Code; (d) a sale of all or substantially all of Debtors' businesses is consummated; or (e) Debtors cease substantially all of their business operations. In the absence of any of the foregoing Events of Default, this order shall remain in effect, unless superseded or extended by further order of this Court; provided, however, that this Order may be extended on the same terms without further notice and hearing upon the consent of the Debtors and Wells Fargo which consent shall be filed with the Court.

8.

The entry of this Order shall constitute perfection of the liens granted herein without the necessity of filing or security deeds and the like. However, the automatic stay of Section 362 of the Bankruptcy Code is hereby lifted to allow Wells Fargo to implement the provisions of this Order, including, but not limited to the filing of such security deeds and other security documents necessary to perfect the liens granted herein.

9.

This Order is without prejudice to any rights, claims, defenses, objections or remedies of Wells Fargo or Debtors under the Bankruptcy Code or Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), or under other applicable law and shall not preclude the entry of other orders of this Court as may be appropriate and necessary to protect the interests of Wells Fargo, Debtors or other creditors and parties in interest in this case. This Order in no way constitutes a waiver by Wells Fargo of its right to seek relief from the automatic stay or additional adequate protection of Debtors' use of their collateral or to exercise Wells Fargo's other remedies under the Bankruptcy Code or Bankruptcy Rules, or other applicable law, or a waiver of Debtors' defenses thereto.

10.

Nothing herein shall waive Wells Fargo's rights to move at any time for adequate protection of its interests should it believe that its interests are no longer adequately protected, both in the Collateral and the Cash Collateral, for relief from the automatic stay or any other option authorized under the Bankruptcy Code or other applicable law, including, but not limited to conversion of the Cases to Chapter 7 or appointment of a trustee. The entry of this Order shall not constitute a waiver of any pre-petition default or of any right or remedy of Wells Fargo under applicable non-bankruptcy law.

11.

This Order shall not be construed to constitute the consent of Wells Fargo to the assessment of its Cash Collateral as identified above or its other collateral pursuant to 11 U.S.C. § 506(c), and all parties reserve their rights to same.

12.

The provisions of this Order shall be binding upon Debtors and Wells Fargo and their successors and assigns. In the event that these Cases are dismissed or converted, neither the

entry of this Order nor the dismissal of these Cases shall affect the rights of Wells Fargo under this Order or the Loan Documents, and all of the rights and remedies thereunder and hereunder shall remain in full force and effect. The provisions of this Order shall survive and be binding upon any successor trustee, or any other fiduciary appointed on behalf of the estates or of the Debtors' creditors in these Cases or any Chapter 7 or Chapter 11 case to which these Cases may subsequently converted.

13.

The rights, remedies, powers and privileges conferred upon Wells Fargo pursuant to this Order shall be in addition to and cumulative with those contained in the Loan Documents.

14.

The Debtors shall promptly comply with all reasonable requests of Wells Fargo for information and records pertaining to the operation of the Debtors' businesses, the cash flow accruing therefrom, and the Debtors' reorganization prospects. The Debtors and Wells Fargo shall attempt in good faith to resolve any differences they may have with respect to document production without involvement of the Court.

**[END OF DOCUMENT]**

Prepared and Presented by:

/s/ Martha A. Miller
Martha A. Miller
Georgia Bar No. 507950
Martha A. Miller, P.C.
Counsel for Debtors
2415 International Tower
229 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 607-9008
(404) 607-9068 (facsimile)
mmiller@rbspg.com

Consented to:

/s/ Gwendolyn J. Godfrey
E. Penn Nicholson (Georgia Bar No. 543400)
penn.nicholson@bryancave.com
Gwendolyn J. Godfrey (Georgia Bar No. 153004)
gwendolyn.godfrey@bryancave.com
BRYAN CAVE LLP
One Atlantic Center – 14th Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone: (404) 572-6600
Facsimile: (404) 572-6999

Counsel to Wells Fargo Bank, N.A.

6133251

## EXHIBIT A

Estate of E. Louis Van Dyke and Billie R. Van Dyke
Case No. 10-31266

### Rent Roll

| | |
|---|---|
| Blue Willow Inn Restaurant, Inc. | $8,000.00 |

### Budget

| | |
|---|---|
| Maintenance | $1,500.00 |
| Landscaping | $1,200.00 |
| Pest Control | $ 300.00 |
| Security | $ 30.00 |
| Insurance | $ 900.00 |
| | $3,930.00 |

Net  $4,070.00

# EXHIBIT B

Blue Willow Village, Inc.
Case No. 10-31269

## Rent Roll

| | |
|---|---|
| Ga. Originals/Chapples | $ 500.00 |
| Victory Way Christian Church, Inc. | $1,000.00 |
| Debbie's Staffing | $ 750.00 |
| Blue Willow Gift Shop | $1,500.00 |
| Gym | $ 700.00 |
| | $4,450.00 |

## Budget

| | |
|---|---|
| Maintenance | $ 500.00 |
| Landscaping | $ 600.00 |
| Utilities | $ 800.00 |
| Insurance | $ 700.00 |
| Disposal | $ 360.00 |
| | $2,960.00 |

Net   $1,490.00

## EXHIBIT C

Blue Willow Inn Restaurant, Inc.
Case No. 10-31267

Revenue

$181,249.00

Expenses

| | |
|---|---|
| Food | $ 62,148.00 |
| Labor | $ 54,380.00 |
| Payroll Tax | $ 15,480.00 |
| Linen | $ 2,398.00 |
| Uniforms | $ 215.00 |
| Bank Fees | $ 990.00 |
| Utilities | $ 8,600.00 |
| Telephone | $ 427.00 |
| Equipment Rental | $ 195.00 |
| Office Expense | $ 580.00 |
| General Supplies | $ 3,870.00 |
| Table Top | $ 700.00 |
| Vehicle | $ 391.00 |
| Security | $ 50.00 |
| Pest Control | $ 300.00 |
| Equipment Repairs | $ 700.00 |
| Grease Trap | $ 227.00 |
| Maintenance | $ 1,500.00 |

## EXHIBIT C

| | | |
|---|---|---|
| Music | $ | 65.00 |
| Telephone | $ | 75.00 |
| Rent | $ | 8,000.00 |
| Advertisment | $ | 400.00 |
| Credit Card Fees | $ | 3,400.00 |
| MAG Repairs | $ | 150.00 |
| Dishwasher SPL | $ | 640.00 |
| | | $165,881.00 |

Net  $15,368.00

## EXHIBIT D

Blue Willow Inn Gift Shop, Inc.
Case No. 10-31270

### Revenues

$19,300.00

### Expenses

| | |
|---|---|
| Goods | $ 9,650.00 |
| Labor | $ 5,300.00 |
| Payroll Tax | $ 1,600.00 |
| Bank Fees | $ 75.00 |
| Credit Card Fees | $ 338.00 |
| Rent | $ 1,500.00 |
| Utilities | $ 525.00 |
| Telephone | $ 78.00 |
| Maintenance | $ 90.00 |
| Pest Control | $ 30.00 |
| Security | $ 20.00 |
| Vehicle | $ 100.00 |
| Office Expense | $ 50.00 |
| Supplies | $ 50.00 |
| Management Fees | $ 1,075.00 |
| Interest | $ 15.00 |
| Group Hospitalization | $ 764.00 |
| Taxes | $ 70.00 |

**EXHIBIT D**

Insurance $ 450.00

$21,780.00

Net ($2,480.00)